FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

APR 08 2003

JAMES W. McCORMACK, CLERK
By:_____
DEP CLERK

# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS

| | |
|---|---|
| Thomas N. McLaughlin, by his next friend Delia McLaughlin; Delia McLaughlin; and Thomas W. McLaughlin, <br><br>      Plaintiffs, <br><br>      -v- <br><br> Board of Education of the Pulaski County Special School District and Superintendent Donald J. Henderson, Principal Brenda Allen, Assistant Principal Emanuel McGhee, Assistant Principal Sharon Hawk, Linda Derdon, Jessica Geurin, Joan Blann, and Jimmie Brooks, in their official and individual capacities, <br><br>      Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  COMPLAINT<br>)<br>)  Civ No. __4 - 0 3 - C V - 0 0 2 4 4 6__<br>)<br>)<br>)<br>)<br>)<br>)<br> This case assigned to District Judge _Eisele_<br> and to Magistrate Judge ___Jones___ |

Plaintiffs Thomas N. McLaughlin, by his next friend, Delia McLaughlin; Delia McLaughlin; and Thomas W. McLaughlin, by and through their attorneys, file this Complaint against defendants Board of Education of the Pulaski County Special School District and Superintendent Donald J. Henderson, Principal Brenda Allen, Assistant Principal Emanuel McGhee, Assistant Principal Sharon Hawk, Linda Derdon, Jessica Geurin, Joan Blann, and Jimmie Brooks, in their official and individual capacities.

1

## JURISDICTION AND VENUE

1.     This action is brought to redress the deprivation under color of state law of rights secured by the United States Constitution in violation of 42 U.S.C. §§ 1983 and 1988. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343. This Court has jurisdiction to grant the declaratory relief requested under 28 U.S.C. § 2201.

2.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because upon information and belief, all defendants reside within the district, and because a substantial part of the events or omissions giving rise to plaintiffs' claims occurred in this district.

## PARTIES

3.     Plaintiff Thomas N. McLaughlin ("Thomas") resides in Jacksonville, Arkansas with his parents and brother. He is 14 years old and a 9th grader at Jacksonville Junior High School.

4.     Plaintiffs Delia and Thomas W. McLaughlin are Thomas' parents. At all relevant times, they have been and continue to be taxpayers of Arkansas, Pulaski County and the United States of America.

5.     Defendant Pulaski County Special School District (the "School District") is a school district established by the State of Arkansas and funded by the State and by Pulaski County. The School District operates the public schools in Pulaski County, including Jacksonville Junior High School (the "School"). The School District receives federal financial assistance.

6.     Defendant Donald J. Henderson is the Superintendent of the School District. He

2

is sued in both his official and individual capacity. As Superintendent of the District, he is and was at all relevant times acting under color of state law and as a final policy-maker regarding student conduct and discipline in the School District.

7.      Defendant Brenda Allen is the Principal of Jacksonville Junior High School. She is sued in both her official and individual capacity. As Principal, she is and was at all relevant times acting under color of state law.

8.      Defendant Emanuel McGhee is an Assistant Principal of Jacksonville Junior High School. He is sued in both his official and individual capacity. As an Assistant Principal, he is and was at all relevant times acting under color of state law.

9.      Defendant Sharon Hawk is an Assistant Principal of Jacksonville Junior High School. She is sued in both her official and individual capacity. As an Assistant Principal, she is and was at all relevant times acting under color of state law.

10.     Defendant Linda Derdon is a teacher at Jacksonville Junior High School. She is sued in both her official and individual capacity. As a teacher at the school, she is and was at all relevant times acting under color of state law.

11.     Defendant Jessica Geurin is a teacher at Jacksonville Junior High School. She is sued in both her official and individual capacity. As a teacher at the school, she is and was at all relevant times acting under color of state law.

12.     Defendant Joan Blann is a teacher at Jacksonville Junior High School. She is sued in both her official and individual capacity. As a teacher at the school, she is and was at all relevant times acting under color of state law.

13.     Defendant Jimmie Brooks is a counselor at Jacksonville Junior High School. She

3

is sued in both her official and individual capacity.  As a counselor at the school, she is and was at all relevant times acting under color of state law.

## STATEMENT OF FACTS

14.     Thomas is a ninth grader at Jacksonville Junior High School.  He has attended the School since the beginning of the eighth grade in August 2001, when his family moved to Jacksonville.

15.     Thomas is gay.  He is comfortable with being gay and has been open and honest about his sexual orientation for the past year.

16.     Thomas' parents are also comfortable with his sexual orientation and support their son's decision to live openly and honestly about who he is.

17.     Thomas and his family are Christian and attend church regularly.  They have strongly held religious beliefs.  In their religious belief system, homosexuality is not something to be condemned.  Thomas' parents seek to instill their religious beliefs in their son.

18.     As an openly gay person, Thomas does not hide his sexual orientation at school and has spoken with classmates about the fact that he is gay.

19.     It is important to Thomas to be honest with others about who he is and being open has enabled Thomas to form closer bonds to his friends at school.  He participates in the fabric of school life, both socially and in extracurricular activities such as choir.

20.     While other students at the School generally have not had a problem with Thomas' sexual orientation, unfortunately several teachers and administrators have.

The censorship of Thomas' speech

21.    Thomas has been prohibited by school officials from being open about and discussing his sexual orientation with other students during non-instructional time and he has even been disciplined for doing so.

22.    In November, 2002, after choir class one day, Ms. Blann (Thomas' choir teacher) told Thomas that she did not want to hear any discussion of his sexual orientation and that she found it sickening.  Thomas had told some fellow choir members that he was gay, but he never discussed his sexual orientation during choir practice.  Ms. Blann also told Thomas that because he was open about his sexual orientation, she might not take him to the All Region choir competition for which he had qualified.  Ms. Blann then called Thomas' mother to complain about the fact that he discussed his sexual orientation with other students and told her that she did not want any talk of Thomas being gay as it would give a bad name to the boys' choir.

23.    Later that month, Ms. Derdon (Thomas' computer teacher) sent Thomas to the principal's office because she heard Thomas and a female friend talking between classes in the hallway about boys they thought were cute.  Ms. Derdon told Thomas that this was an inappropriate conversation to have on school grounds.  Thomas' speech occurred between classes and was not disruptive of any school activity.

24.    Ms. Derdon called a conference with Thomas' parents to complain about Thomas' talk in school about the fact that he is gay.  Principal Allen and Assistant Principal McGhee, who participated in the conference, agreed with Ms. Derdon that it was inappropriate for Thomas to discuss his sexual orientation.  See November 18, 2002 Referral (attached as Exhibit 1); November 22, 2002 Referral (attached as Exhibit 2).

5

25.     Moreover, various teachers have attempted to silence Thomas by telling him he was at risk of physical harm from which the school would not or could not protect him.

26 .    Ms. Derdon has told Thomas on a number of occasions that he had better keep his mouth shut about his sexual orientation or he will end up getting beat up. On at least one occasion, she warned that he could end up like Matthew Shepard, the young gay man who was tied to a fence and beaten to death in Wyoming.

27.     In November 2002, Assistant Principal Hawk told Thomas that it was his openness about his sexuality that is to blame for another boy, who was mistaken for Thomas, being beat up so often at school last year that he had to transfer to another school. She also told Thomas that his openness about being gay endangered his little brother's safety.

28.     Thomas intends to continue to be open about his sexual orientation at school, but he fears that if he does, he will face further discipline.

29.     Thomas has also been prohibited by school officials from discussing with other students the discipline that he has received at school.

30.     On January 31, 2003, Thomas was suspended for two days for telling other students that he had been disciplined at school by being made to read the Bible (that incident is discussed below). See Suspension Notice dated January 31, 2003 (attached as Exhibit 4). This expression occurred at the end of computer class during free time after instruction had ended, and thus, did not disrupt classwork or the operation of the school. Thomas was then told by Principal Allen, Assistant Principal McGhee and Ms. Derdon that if he told any of his friends why he was suspended, he would automatically be recommended for expulsion.

31.     In February, 2003, after Thomas returned to school after his suspension, he was

6

written up twice by Ms. Derdon for discussing with classmates his suspension and the fact that he had been made to read the Bible. His conversations, which occurred during non-instructional time, did not disrupt classwork or the operation of the school. See Referrals dated February 5, 2003 and February 7, 2003 (attached as Exhibit 5). Thomas' mother was called by Assistant Principal McGhee and told that he intended to suspend Thomas for four days for this. He ultimately was not suspended that time.

32.     It is important to Thomas to be able to express his feelings about having been forced to read the Bible at school and other unfair and inappropriate discipline against him. He intends to discuss these matters with his school friends, but he is fearful that he will face further discipline – and even expulsion– if he does so.

33.     It is upsetting to Thomas to be treated this way by school officials. This interferes with his ability to concentrate on his school work. Moreover, he has missed class time due to being suspended and being sent to the assistant principal's office because of the content of his speech. As a result of all of this, some of his grades have dropped this term. Moreover, his school record contains disciplinary reports based on his exercise of his right to free expression.

34.     Despite Thomas' parents' complaints to Assistant Principal McGhee and Principal Allen about the restrictions on Thomas' speech, which they raised in two parent conferences, and a request to the Superintendent, the School District has not agreed that it would not discipline Thomas again for discussing during non-instructional time his sexual orientation or the forced Bible reading and other discipline that he has received from school officials.

The religious preaching to Thomas

35.     In school classrooms and during school hours, teachers preached to Thomas their religious beliefs about homosexuality.  Moreover, an assistant principal disciplined Thomas by preaching his religious beliefs about homosexuality and making Thomas read from the Bible. The religious views preached to Thomas by these school officials are inconsistent with Thomas' own religious beliefs and those that his parents seek to instill in him.

36.     In or around February 2002, Ms. Geurin (Thomas' Personal Living Skills teacher) told Thomas to come see her at her desk during class.  She asked Thomas if he was gay, and when he said that he was, she took out a Bible and read him passages about homosexuality.

37.     In November 2002, Ms. Blann held him after class and asked him if he was gay, and when he answered "yes," preached to him her religious view of what the Bible says about homosexuality and offered to give him scriptures.

38.     Ms. Derdon has also preached her religious beliefs about homosexuality to Thomas in the classroom.  See January 30, 2003 Referral and attached statement of Ms. Derdon (attached as Exhibit 3).

39.     In mid-November, 2002, Thomas was sent to Assistant Principal McGhee's office by Ms. Derdon after they had an argument about the fact that Thomas was gay.  Ms. Derdon had called him "abnormal" and "unnatural" for being gay and this upset Thomas and he expressed his disagreement with her.  As punishment, Assistant Principal McGhee preached to Thomas his religious beliefs regarding homosexuality and then made Thomas read passages from the Bible out loud.  This made Thomas feel extremely uncomfortable.

40.     The fact that Thomas was subjected to preaching of his teachers' and assistant

8

principal's religious beliefs about homosexuality– which beliefs are inconsistent with his own and his parents' religious beliefs – has upset Thomas and his parents. It has also interfered with Thomas' ability to concentrate on his schoolwork and, as a result, some of his grades have dropped. All of this has caused plaintiffs emotional distress.

The discrimination in discipline against Thomas

41. Thomas was discriminated against based on his sexual orientation with respect to discipline he received by school officials. He was singled out for discipline for conduct also engaged in by other students who were not disciplined.

42. In late November, 2002, Thomas and a female friend, while in the hallway between classes, were talking about boys who were cute. Ms. Derdon, overhearing this, said this was an inappropriate conversation to have on school grounds and sent Thomas to the principal's office. Thomas' friend was not disciplined even though she was an equal participant in the conversation. Moreover, other students, who were also standing within Ms. Derdon's earshot, were talking explicitly about sex, but they were not disciplined either.

43. Despite a request to the Superintendent, the School District has not agreed that it would not discriminate against Thomas based on his sexual orientation with respect to school discipline.

44. Defendants' wrongful conduct resulted in Thomas' school record being tainted by disciplinary reports. Moreover, being subjected to discriminatory discipline has upset Thomas and interfered with his ability to concentrate on his schoolwork, and as a result, some of his grades have dropped. All of this has caused him emotional distress.

9

### The disclosure of private information about Thomas

45. Last year, when Thomas was in the 8th grade and not yet ready to tell his parents that he is gay, a school official called his mother to so inform her, over Thomas' objection, and with no legitimate basis for doing so.

46. In November 2001, Thomas was not open about his sexual orientation at school except to a few close friends. He had not told any teachers or school administrators and did not believe they knew that he was gay.

47. Assistant Principal Hawk learned or suspected Thomas' sexual orientation and asked him if his parents knew he was gay. When he said that they did not, Assistant Principal Hawk said that she would tell them at the end of the day.

48. Thomas, upset and terrified about this, went to seek assistance from Ms. Brooks, a school counselor. Ms. Brooks presented Thomas with two options- either she would call his parents and tell them, or Assistant Principal Hawk would. Because non-disclosure was not an option, Thomas chose Ms. Brooks, who called his mother at work and told her.

49. This sudden, unplanned disclosure to his parents caused Thomas significant anxiety and deprived him of the opportunity to tell them at a time and in a manner that he determined would be the most appropriate for his family. All of this caused him emotional distress.


### FIRST CLAIM FOR RELIEF OF THOMAS N. MCLAUGHLIN

(Freedom of Speech, 42 U.S.C. § 1983)

50. Thomas, by his next friend, repeats and realleges paragraphs 1 to 49 as if set forth

in full.

51.     Defendants Blann, Derdon, McGhee, Allen, Henderson and the School District, acting under color of state law, have prohibited Thomas from being open and speaking about his sexual orientation in school during non-instructional time and have disciplined him for doing so, despite the fact that such expression did not and could not have been reasonably anticipated to cause a substantial and material disruption of the operation of the school or interfere with the rights of others.

52.     In addition, defendants Derdon, McGhee, Allen, Henderson and the School District, acting under color of state law, have prohibited Thomas from speaking with other students during non-instructional time about the discipline he has received from School officials, despite the fact that such expression did not and could not have been reasonably anticipated to cause a substantial and material disruption of the operation of the school or interfere with the rights of others.  Moreover, defendants further disciplined Thomas -- including by suspension-- when he did discuss discipline with classmates.

53.     Thus, defendants violated Thomas' right to free speech guaranteed by the 1st and 14th Amendments to the United States Constitution.

54.     These violations of Thomas' right to free speech were the result of decisions by school personnel, including Assistant Principal McGhee and Principal Allen, which the Superintendent refused to reverse and thereby endorsed, and thus, constitute official policy of the School District.

55.     The unconstitutional acts of defendants are a prior restraint of Thomas' speech and have caused him to fear that he will be further disciplined for exercising that right.  He has

11

incurred damages including emotional distress.

56.     Thomas has no adequate remedy at law to redress the wrongs herein alleged. Unless enjoined by this Court, defendants will continue to violate his right to free speech, which will continue to cause him irreparable harm.

57.     Unless defendants are ordered to remove the disciplinary records in Thomas' school file based on his exercise of his right to free speech, those records will remain in his file and taint his school record.

## SECOND CLAIM FOR RELIEF OF ALL PLAINTIFFS

(Establishment of Religion, 42 U.S.C. § 1983)

58.     Plaintiffs repeat and reallege paragraphs 1 to 57 as if set forth in full.

59.     In school classrooms and during the school day, defendants McGhee, Blann, Geurin and Derdon, acting under color of state law, subjected Thomas to preaching of their religious views regarding homosexuality.  Moreover, defendant McGhee, acting under color of state law, disciplined Thomas by preaching his religious views regarding homosexuality to Thomas and making him read from the Bible.

60.     These religious views preached to Thomas by school personnel are inconsistent with his own religious beliefs and the religious beliefs that his parents seek to instill in him.

61.     Moreover, Delia and Thomas W. McLaughlin object to tax dollars being used to endorse religion.

62.     This endorsement of religion by public school personnel violated the establishment clause of the 1st Amendment to the United States Constitution.

12

63.     The fact that Thomas was subjected to preaching of his teachers' and assistant principal's religious beliefs about homosexuality– which beliefs are inconsistent with his own religious beliefs and those his parents seek to instill in him – caused plaintiffs emotional distress.

64.     Plaintiffs have no adequate remedy at law to redress the wrongs herein alleged.

## THIRD CLAIM FOR RELIEF OF DELIA AND THOMAS W. MCLAUGHLIN

### (Parental autonomy, 42 U.S.C. § 1983)

65.     Delia and Thomas W. McLaughlin repeat and reallege paragraphs 1 to 64 as if set forth in full.

66.     In school classrooms and during the school day, defendants McGhee, Blann, Derdon and Geurin, acting under color of state law, subjected Thomas to preaching of their religious views regarding homosexuality.  Moreover, defendant McGhee, acting under color of state law, disciplined Thomas by preaching his religious views regarding homosexuality to Thomas and making him read from the Bible.

67.     These religious views preached to Thomas by school officials are inconsistent with the religious beliefs that his parents seek to instill in him.

68.     Thus, defendants violated plaintiffs Delia and Thomas W. McLaughlin's right to parental autonomy protected by the due process clause of the 14th Amendment to the United States Constitution.

69.     The fact that their son was subjected to preaching of his teachers' and assistant principal's religious beliefs about homosexuality– which beliefs are inconsistent with the

13

religious beliefs they seek to instill in him – caused them emotional distress.

70.     Plaintiffs have no adequate remedy at law to redress the wrongs herein alleged.

## FOURTH CLAIM FOR RELIEF OF THOMAS N. MCLAUGHLIN

(Equal Protection, 42 U.S.C. § 1983)

71.     Thomas, by his next friend, repeats and realleges paragraphs 1 to 70 as if set forth in full.

72.     Defendants Derdon, McGhee, Allen Henderson and the School District singled out Thomas for more rigorous discipline and suppressed his speech because of his sexual orientation.

73.     Defendants discriminated against Thomas because of his sexual orientation by disciplining him for engaging in a conversation about boys who were cute, but allowing the same conduct on the part of a female student, and sexually explicit talk by other students to go unpunished.  There is no rational basis, let alone compelling government interest that justifies this discriminatory treatment.

74.     Thus, defendants, acting under color of state law, violated Thomas' right to equal protection guaranteed by the 14th Amendment to the United States Constitution.

75.     This violation of Thomas' right to equal protection was the result of decisions by school personnel, including Assistant Principal McGhee and Principal Allen, which the Superintendent refused to reverse and thereby endorsed, and thus, constitute final policy of the School District.

76.     This discriminatory treatment of Thomas based on his sexual orientation has

14

caused him damages including emotional distress.

77.     Thomas has no adequate remedy at law to redress the wrongs herein alleged. Unless enjoined by this Court, defendants will continue to violate his right to equal protection, which will cause him irreparable harm.

78.     And unless defendants are ordered to remove from Thomas' school file disciplinary records based on discriminatory standards of discipline, those records will remain in his school file and taint his school record.

## FIFTH CLAIM FOR RELIEF OF THOMAS N. MCLAUGHLIN

### (Privacy, 42 U.S.C. § 1983)

79.     Thomas, by his next friend, repeats and realleges paragraphs 1 to 78 as if set forth in full.

80.     Defendants Brooks and Hawk caused the disclosure of Thomas' sexual orientation to his parents, over his objection, without any legitimate reason, let alone a compelling one, for doing so.

81.     This information was private information which the government may not disclose absent a compelling reason for doing so.

82.     Thus, defendants, acting under color of state law, violated Thomas' right to privacy guaranteed by the United States Constitution.

83.     This violation of Thomas' right to privacy was the result of decisions by school personnel, including Assistant Principal Hawk, which the Superintendent refused to reverse and thereby endorsed, and thus, constitutes final policy of the School District.

84.    The defendants' disclosure of this private information without Thomas' consent caused him extreme anxiety and deprived him of the opportunity to tell his parents about his sexual orientation at a time and in a manner that he determined would be the most appropriate for his family. All of this caused him emotional distress.

WHEREFORE, plaintiffs pray for the following relief:

1.    a declaration that defendants' prohibition against Thomas speaking openly about his sexual orientation during non-instructional time at school violates the 1st and 14th Amendments of the United States Constitution; an injunction prohibiting defendants from maintaining this unlawful rule and from disciplining Thomas for being open about and speaking about his sexual orientation during non-instructional time; an order to remove from Thomas' school file all disciplinary records based on his exercise of his right to free speech; and compensatory and punitive damages in an amount to be determined by the Court;

2.    a declaration that defendants' prohibition against Thomas speaking during non-instructional time about the discipline he received from school officials violates the 1st and 14th Amendments of the United States Constitution; an injunction prohibiting defendants from maintaining this unlawful rule and from disciplining Thomas for speaking during non-instructional time about discipline he has received; an order to remove from Thomas' school file all disciplinary records based on his exercise of his right to free speech; and compensatory and punitive damages in an amount to be determined by the Court;

3.    a declaration that defendants, by disciplining Thomas with religious preaching

16

and by requiring him to read the Bible, violated the establishment clause of the 1st Amendment of the United States Constitution; an injunction prohibiting defendants from disciplining students through religious preaching, including forced Bible reading; and compensatory and punitive damages in an amount to be determined by the Court;

4.      a declaration that defendants, by subjecting Thomas to religious preaching by teachers in school classrooms during the school day, violated the establishment clause of the 1st Amendment of the United States Constitution; an injunction prohibiting defendants from preaching religion to students at school during the school day; and compensatory and punitive damages in an amount to be determined by the Court;

5.      a declaration that defendants, by subjecting Thomas to preaching of religious beliefs inconsistent with his own and his parents' religious beliefs, violated plaintiffs' right to parental autonomy guaranteed by the 14th Amendment of the United States Constitution; an injunction prohibiting defendants from preaching religion to students at school during the school day; and compensatory and punitive damages in an amount to be determined by the Court;

6.      a declaration that defendants, by discriminating against Thomas on the basis of sexual orientation by applying more stringent disciplinary standards to him and suppressing his speech about his sexual orientation, violated the equal protection clause of the 14th Amendment to the United States Constitution; an injunction prohibiting defendants from further engaging in this unconstitutional conduct; an order to remove from Thomas' school file all disciplinary records based on this discriminatory standard of discipline; and compensatory and punitive damages in an amount to be determined by the Court;

8.      a declaration that defendants, by discriminating against Thomas on the basis of

17

sexual orientation by disciplining him for talking about boys but allowing the same conduct on the part of a female student and other students' explicit discussion of sexual activity to go unpunished, violated the equal protection clause of the 14th Amendment to the United States Constitution; an injunction prohibiting defendants from further engaging in this unconstitutional conduct; an order to remove from Thomas' school file all disciplinary records based on this discriminatory standard of discipline; and compensatory and punitive damages in an amount to be determined by the Court;

9.     a declaration that defendants' disclosure of Thomas' sexual orientation to his parents over his objection, without a compelling reason for doing so, violated his right to privacy guaranteed by the United States Constitution; and compensatory and punitive damages in an amount to be determined by the Court.

10.     an award to plaintiffs of their costs, including reasonable attorney's fees pursuant to 42 U.S.C. § 1988; and

11.     such other and further relief as the Court deems just and proper.

Dated: April 8, 2003

Kathy L. Hall
Law Offices of John Wesley Hall, Jr.
For the American Civil Liberties Union
 of Arkansas
523 W. 3rd Street
Little Rock, AR 72201

18

Telephone: (501) 371-9131

Leslie Cooper
James D. Esseks
Matthew Coles
American Civil Liberties Union
  Foundation
125 Broad Street, 18th Floor
New York, NY 10004-2400
Telephone: (212) 549-2627

*Counsel for Plaintiffs*

SKOKOS LAW FIRM      ☒006

**PULASKI COUNTY SPE___L SCHOOL DISTRICT · STUDENT DISC___INARY REFERRAL FORM**

Student _Thomas McLaughlin_   Grade/Class _9?_   Date/Time _9/26/02_

Sex: M F   (Circle One)   Race: B W O   (Circle One)   Date/Time of Incident _9/26/02_

**CLASS/SCHOOL VIOLATION(S):**
Both of the following actions were taken, when applicable, prior to referral for class/school violations:

1) Parent Notification (phone, note, or in-person) _9/24/02 — Mom)_   Date: ___

2) _____ Other (Be Specific) _____ Date: ___

**HANDBOOK VIOLATION(S):**
List the specific rule infraction by number from PCSSD Handbook for Student Conduct and Discipline.

Rule Number(s): _3 tardies_

Teacher Comments: (Required) _9/11/ , 9/13 , 9/25_

_(Say locker is too far away)_

Teacher's Signature _____

**ADMINISTRATIVE ACTION(S):**
The above named student has violated Rule Number(s) _4/6_

Rule consequence(s): (Pursuant to PCSSD Handbook for Student Conduct and Discipline) _5 days_

_D-Hall_

Administrator's Comments: (Required) _____ 1:38 9/26/

Administrator's Signature _____ Date/Time _/02_

A student excluded from class must have this Disciplinary Referral Form completed by an administrator before being re-admitted to c___

129020 (Rev. 12/95)    **WHITE - SCHOOL**    **YELLOW - PARENT**    **PINK & GOLD - TEACHER**

---

**PULASKI COUNTY SPECIAL SCHOOL DISTRICT · STUDENT DISCIPLINARY REFERRAL FORM**

Student _Thomas McLaughlin_   Grade/Class _9th_   Date/Time _Nov. 18, 2___

Sex: M F   (Circle One)   Race: B W O   (Circle One)   Date/Time of Incident _8th_

**CLASS/SCHOOL VIOLATION(S):**
Both of the following actions were taken, when applicable, prior to referral for class/school violations:

1) Parent Notification (phone, note, or in-person) _called Delia McLaughlin (224-7400)_ Date: _11-18-20_

2) _____ Other (Be Specific) _____ Date: ___

**HANDBOOK VIOLATION(S):**
List the specific rule infraction by number from PCSSD Handbook for Student Conduct and Discipline.

Rule Number(s): _rule 11 ??_

Teacher Comments: (Required) _excessive talking about being gay in class, I have told him numerous times that this topic is not appropriate for public talk, I took him outside of class and told him I expected him to stop talking immedi___ when he resumed the same topic in class again._

Teacher's Signature _____

**ADMINISTRATIVE ACTION(S):** _Jerden_
The above named student has violated Rule Number(s) _11_

Rule consequence(s) (Pursuant to PCSSD Handbook for Student Conduct and Discipline) _Parent - Conf___

# EXHIBIT 1

Administrator's Comments: (Required) _____

Administrator's Signature _____ Date/Time _11/8/02_

00/01/00  10:07 FAX 001 374 5052        SKUKUS LAW FIRM                    ☒007

**PULASKI COUNTY SPEC___ . SCHOOL DISTRICT - STUDENT DISC___'NARY REFERRAL FORM**

Student _Thomas McLaughlin_ ___ Grade/Class _9th_ ___ Date/Time _Nov. 22, 20__

Sex: (M) F  (Circle One)    Race: B (W) O  (Circle One)    Date/Time of Incident _8th_

**CLASS/SCHOOL VIOLATION(S):**

Both of the following actions were taken, when applicable, prior to referral for class/school violations:

1) Parent Notification (phone, note, or in-person) _____ Date: _____

2) _____ Date: _____
   Other (Be Specific)

**HANDBOOK VIOLATION(S):**

List the specific rule infraction by number from PCSSD Handbook for Student Conduct and Discipline.

Rule Number(s): _____

Teacher Comments: (Required) _Carrying on same conversation from last week about his sexuality in class after being told not to._

Teacher's Signature _Durdin_

**ADMINISTRATIVE ACTION(S):**

The above named student has violated Rule Number(s) _11_

Rule consequence(s): (Pursuant to PCSSD Handbook for Student Conduct and Discipline) _Parent, teacher, student, and Admin. ~~this~~ Conference_

Administrator's Comments: (Required) _____

Administrator's Signature _Em_ ___ Date/Time _11/25/02_

A student excluded from class must have this Disciplinary Referral Form completed by an administrator before being re-admitted to class

129020 (Rev. 12/95)    WHITE - SCHOOL    YELLOW - PARENT    PINK & GOLD - TEACHER

---

**PULASKI COUNTY SPECIAL SCHOOL DISTRICT - STUDENT DISCIPLINARY REFERRAL FORM**

Student _Thomas McLaughlin_ ___ Grade/Class _9th_ ___ Date/Time _1/30/03_

Sex: (M) F  (Circle One)    Race: B (W) O  (Circle One)    Date/Time of Incident _1/30    8th period_

**CLASS/SCHOOL VIOLATION(S):**

Both of the following actions were taken, when applicable, prior to referral for class/school violations:

1) Parent Notification (phone, note, or in-person) _____ Date: _____

2) _____ Date: _____
   Other (Be Specific)

**HANDBOOK VIOLATION(S):**

List the specific rule infraction by number from PCSSD Handbook for Student Conduct and Discipline.

Rule Number(s): _Rule 11    Harassment_

Teacher Comments: (Required) _statement attached_

Teacher's Signature _Durden_

**ADMINISTRATIVE ACTION(S):**

The above named student has violated Rule Number(s) _11_

Rule consequence(s): (Pursuant to PCSSD Handbook for Student Conduct and Discipline) _____

_Sus~~pended~~ EXHIBIT 2 for 2 days_

Administrator's Comments: (Required) _Em_

Administrator's Signature _____ Date/Time _1/31/03_

A student excluded from class must have this Disciplinary Referral Form completed by an administrator before being re-admitted to class.

January 30, 2003

Today during my 8th period class, several incidents happened that I need to document.

Statement: Thomas McLaughlin, who has been notified to not speak out in my class concerning a previous meeting with his parents and the principal, spoke and wrote words of harassment directed to me several times during the period.

Thomas excessively talks with the persons sitting around him. He has been told several times to get back to work and to not talk continuously during class. I have told the entire class that I expect the first half of the period to be quiet, then they may whisper. I will state that Thomas is only one of the many that I have to continuously remind to stay on task during class.

Today, the remark was made several times by Thomas that the class should not make me mad at them because I would make them listen to and read the Bible. Thomas made these remarks as I would remind other students to get back on task. At the end of the period, I was getting the class to clean up and put chairs back and to line up at the door. Thomas took a marker and wrote on the board, Don't make her mad because she will make you read the Bible. I asked Thomas to erase the board before I saw what it said because I don't like them to mess up the board on the way out. Two others picked up pens and began to write, so I moved closer and saw what it said. I then told Thomas to erase the board immediately because I had asked him to do that earlier. When I asked him to erase the board, he began to say that I could get sued for making people read the Bible. Sarah Lawrence chimed in, saying Yeah, that could be a lawsuit, you ought to sue her.

FYI: I have never asked Thomas to read the Bible. I have witnessed my faith to him as I do to any person, and I did confront his statement of being a homosexual earlier in the year with the statement "Have you read what the Bible says about homosexuality?" since I know he does attend a church in the area. (I assume that if a person attends a church that they are willing to know the Word and to read the Bible on their own and to talk about it.) At the time of the original conference with Thomas and his parents, it was stated to the parents and Thomas that I expected to hear no more conversation on this topic or a related topic in class. The classroom is for learning the subject matter and not for continuing the talk of homosexuality or the related discussion that we had at that meeting.

Conclusion: At this point, I feel that is pure harassment of myself by Thomas. With his statements and talking, he is getting other students involved in a conversation that is very inappropriate. Also, the other students are hearing one side of the story only and do not know what really has happened. This is fueling a disruption in the classroom, and leading to an unpleasant environment for all the other students in class. I am referring Thomas to the office for this matter, again.

# EXHIBIT 3

| Student ID __434731909__ | School # ___48__ |
|---|---|
| Sex/Race Code ___M/1__ | Reason Code ___11__ |
| No. Days Suspended ___2__ | Trans. Code ___01__ |

# PULASKI COUNTY SPECIAL SCHOOL DISTRICT
## SUSPENSION NOTICE

Name of School _Jacksonville Junior High_ Date of Suspension _01/31/2003_ Prior Suspensions ___0___

Name of Student ___Thomas McLaughlin___ Date of Birth _09/03/1988_ Grade ___9___ Name of Parent

or Guardian ___Thomas McLaughlin___ Address ___806 N. Loop Rd.___ Ph _982-1607_
                                              (Street/City/Zip Codes)

Dear Patron

on the above date ___Thomas___ was suspended from school for _2_

days beginning_02/03/2003_ and ending_02/04/2003_ He /she may return to school on _02/05/2003_

Prior to the Student's readmission to school a student parent principal conference will be necessary and if possible should be held within the next 24 hours.

The reason for this suspension was the fact that ___Thomas___ violated _Rule #11_
                                                                                         Policy or Rule #
by (Description of violation) _harassing statements toward his teacher._

Pulaski County Special School District policy provides that a student may be temporarily suspended by the principal, when, in his/her opinion, such student has failed to conform to school regulations to the extent that his/her conduct has become a serious detrimental influence on the welfare of other students or on the general morale of the school. Students under suspension are not allowed on any Pulaski County Special School District campus until the suspension has been lifted except for a parent conference appointment. Please call _982-1587_ for an appointment for possible reinstatement.

Sincerely,

Signature of Principal

## COMPLETE FOR SPECIAL EDUCATION SUSPENSION INFORMATION ONLY

_____, _____ reporting inappropriate behavior or disciplinary
Employee's name                          Position

Information:   Type of conference: IEP Staffing ( )   Parent ( )   Telephone ( )

Is the handicapping condition related to the inappropriate behavior? Yes ___ No ___ unknown ___.

Date _____ of the immediate IEP review conference.

_____ Time _____ Place

IEP Team Members: Chairperson _____

Original to Parents/Legal Guardian
One (1) copy to Pupil Personnel
One (1) copy for files
One (1) copy for Counseling Department

Sincerely,  **EXHIBIT 4**

Signature of Principal

#129134

**PULASKI COUNTY SPECIAL SCHOOL DISTRICT  -  STUDENT DISCIPLINARY REFERRAL FORM**

Student _Thomas McNaughlin_   Grade/Class _7th_   Date/Time _3/5/03_

Sex:  M  F  (Circle One)       Race:  B  (W)  O   (Circle One)       Date/Time of Incident _8th Grind_

**CLASS/SCHOOL VIOLATION(S):**
Both of the following actions were taken, when applicable, prior to referral for class/school violations:

1) Parent Notification (phone, note, or in-person) _____ Date: _____

2) _____ Other (Be Specific) _____ Date: _____

**HANDBOOK VIOLATION(S):**
List the specific rule infraction by number from PCSSD Handbook for Student Conduct and Discipline.

Rule Number(s): _____

Teacher Comments: (Required) _____

Teacher's Signature _____

**ADMINISTRATIVE ACTION(S):**
The above named student has violated Rule Number(s): _____

Rule consequence(s): (Pursuant to PCSSD Handbook for Student Conduct and Discipline) _Parent, Teacher_

Administrator's Comments: (Required) _____

Administrator's Signature _____   Date/Time _____

A student excluded from class must have this Disciplinary Referral Form completed by an administrator before being re-admitted to class.

WHITE - SCHOOL          YELLOW - PARENT          PINK & GOLD - TEACHER

**EXHIBIT 5**

## PULASKI COUNTY SPECIAL SCHOOL DISTRICT   -   STUDENT DISCIPLINARY REFERRAL FORM

Student _____   Grade/Class _____   Date/Time _____

Sex:  M  F   (Circle One)        Race:  B  W  O   (Circle One)        Date/Time of Incident _____

**CLASS/SCHOOL VIOLATION(S):**
Both of the following actions were taken, when applicable, prior to referral for class/school violations:

1) Parent Notification (phone, note, or in-person) _____   Date: _____

2) _____ Other (Be Specific) _____   Date: _____

**HANDBOOK VIOLATION(S):**
List the specific rule infraction by number from PCSSD Handbook for Student Conduct and Discipline.

Rule Number(s) _____

Teacher Comments: (Required) _____

_____

Teacher's Signature _____

**ADMINISTRATIVE ACTION(S):**
The above named student has violated Rule Number(s) _____

Rule consequence(s): (Pursuant to PCSSD Handbook for Student Conduct and Discipline) _____

_____

Administrator's Comments: (Required) _____

_____

Administrator's Signature _____   Date/Time _____

A student excluded from class must have this Disciplinary Referral Form completed by an administrator before being re-admitted to c___

PINK & GOLD - TEACHER

ATTN:
Leslie
Cooper

2/5/03 referral

"Upon entering the room & handing me the suspension return slip Thomas was commenting [another student's] question about why he was suspended - 'It was about her making me read Bible or something.' This again is refusal to obey a previous statement by principal to not refe back to an earlier conference."

2/7/03 referral

"Thomas refused to go to computer. He was talking outside about referrals, suspensions, etc. a then commented that 'at least hers was not from reading the Bible.' (Refers back from previous conference)."